**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **THE BAMA COMPANIES, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 18-CV-45-GKF-JFJ** |
| **v.** | ) | |
| | ) | |
| **STAHLBUSH ISLAND FARMS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Before the Court is Plaintiff's Discovery Motion Pursuant to Fed. R. Civ. 26(b)(5)(B) ("Motion") (ECF No. 43), which was filed under seal. Plaintiff The Bama Companies, Inc. ("Bama") requests that the Court (1) preclude Defendant Stahlbush Island Farms, Inc. ("Stahlbush") from "clawing back" privileged documents pursuant to Federal Rule of Civil Procedure 26(b)(5)(B) ("Rule 26(b)(5)"); and (2) find that Stahlbush waived attorney-client privilege as to the documents. In response, Stahlbush acknowledges that disclosure of the privileged documents occurred but urges the Court to apply Federal Rule of Evidence 502(b), which provides that disclosure does not operate as a waiver if certain requirements are met.

The Court ordered expedited briefing, ordered Stahlbush to submit the documents for *in camera* review, and conducted oral argument on August 7, 2019.[1] For reasons explained below, the Motion is granted, and the Court finds that privilege has been waived.

## I. Facts Relevant to Resolution of Motion

Bama alleges as follows. In March of 2017, Bama discovered twelve stones in fruit pies made with black raspberries sold to Bama by Stahlbush. Bama notified Stahlbush, and Stahlbush

---

[1] After the hearing, the parties moved for an extension of the scheduling order. The discovery deadline has been moved from August 30, 2019, to September 30, 2019.

cooperated with Bama in investigating the issue. Ultimately, Stahlbush informed Bama it did not have the necessary insurance coverage, and Bama filed this lawsuit asserting claims for breach of contract and negligence against Stahlbush on December 27, 2017.

The documents at issue in the Motion consist of email communications between Stahlbush employees and Stahlbush's counsel, Ben Fetherston ("Fetherston"), from March to June of 2017 ("emails"). All emails relate to the pre-suit investigation of Bama's claims. Within the emails is a statement by Keeley Jensen ("Jensen"), Stahlbush's quality assurance manager, to Fetherston that "Black Raspberries have been determined as the source of the stones" ("3/21/17 Email"). ECF No. 43-10 at 3. Bama does not dispute that the communications are subject to the attorney-client privilege.

On or around August 20, 2018, Stahlbush responded to Bama's first set of discovery requests. Bama's requests encompassed the emails, but Stahlbush did not produce a privilege log or otherwise identify the emails as responsive. During oral argument, Stahlbush's counsel stated she did not recall reviewing the emails during her document review over a year ago, but she speculated that they were withheld based on Stahlbush's vagueness and overbreadth objections. Counsel also speculated that privilege was perhaps overlooked, because some of the privileged communications are within a chain of emails that include communications with Bama.

Much later in the litigation, Stahlbush retained a testifying expert, Dr. Reilly. Stahlbush's counsel inadvertently produced the emails to Dr. Reilly for review in preparing her expert opinions. Dr. Reilly's report contains a long list of "documents reviewed," which includes the emails. ECF No. 43-8 at 7-16. On July 2, 2019, the day before Dr. Reilly's deposition, Stahlbush produced all documents to Bama that had been produced to Dr. Reilly, including the emails. On July 3, 2019, Bama's counsel questioned Dr. Reilly extensively about the 3/21/17 Email, which

contains the communication from Jensen to Fetherston that black raspberries had been determined as the source of the stones. Dr. Reilly admitted she had reviewed the 3/21/17 Email. During this questioning, Stahlbush's counsel failed to raise any privilege objection or demand that counsel cease questioning about the 3/21/17 Email, as permitted by Federal Rule of Civil Procedure 30(c)(2). During oral argument, counsel explained that she failed to object because she did not immediately recognize the document and was unsure of its status as privileged.

On or around July 7, 2019, Bama's counsel sent an email to Stahlbush's counsel to inquire whether Stahlbush had failed to produce other unresponsive documents. Stahlbush's counsel did not make any claw-back demand at that time. On July 11, 2019, Stahlbush's counsel "began communicating with Bama's counsel on the privilege issue" and indicated that "a clawback was necessary." ECF No. 47-1. On July 26, 2019, three weeks after the deposition, Stahlbush sent a "claw back" letter to Bama pursuant to Rule 26(b)(5)(B), asserted attorney-client privilege as to the emails, and provided a privilege log, which is attached as Exhibit 12 to the Motion. Bama ceased all use of the privileged emails and filed the sealed Motion requesting a ruling from the Court, as required by Rule 26(b)(5)(B).

## II.    Analysis

There is no dispute that (1) the emails are privileged attorney-client communications; and (2) they were disclosed to third parties in this federal proceeding, including Dr. Reilly and Bama. The issue is whether such disclosures resulted in waiver of privilege. As its legal basis for avoiding waiver, Stahlbush relies on Federal Rule of Evidence 502(b). Rule 502(b) sets "default standards governing the inadvertent disclosure of information that is subject to the attorney-client privilege or other protections." *Certain Underwriters at Lloyd's, London v. Nat'l R.R. Passenger Corp.*,

218 F. Supp. 3d 197, 201 (E.D.N.Y. 2016). Rule 502(b) provides that disclosure of privileged documents does not constitute waiver if three requirements are met:

> (1) the disclosure is inadvertent;
> (2) the holder of the privilege . . . took reasonable steps to prevent disclosure; and
> (3) the holder of the privilege . . . took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

The following considerations guide the analysis: "(1) the reasonableness of the precautions taken to prevent disclosure; (2) the time taken to rectify the error; (3) the scope of the discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness." *Cudd Pressure Control, Inc. v. New Hampshire Ins. Co.*, 297 F.R.D. 495, 500 (W.D. Okla. 2014) (quoting *Judson Atkinson Candies, Inc. v. Latini–Hohberger Dhimantec*, 529 F.3d 371, 388 (7th Cir. 2008)). Stahlbush bears the burden of proving that Rule 502(b)'s requirements are satisfied. *Id.*

The Court concludes that Stahlbush's disclosures of the emails resulted in waiver of attorney-client privilege for two alternative reasons: (1) waiver occurred by means other than "disclosure," and Rule 502(b) has no application; (2) alternatively, assuming Rule 502(b) applies, Stahlbush cannot satisfy Rule 502's requirements.

## A.    Waiver of Privilege Occurred by Means Other than Mere "Disclosure"

As an initial matter, the Court finds Stahlbush's reliance on Rule 502(b) to be misplaced, because waiver of the privilege occurred by "other means" after the inadvertent disclosure. *See Certain Underwriters at Lloyd's, London*, 218 F. Supp. 3d at 201 (explaining that evidentiary rules governing waiver by an inadvertent disclosure "say nothing of waiver by other means," and drawing distinction between mere disclosure of privileged materials and subsequent use of inadvertently disclosed documents for litigation purposes). Following the inadvertent disclosure to Dr. Reilly, Dr. Reilly considered the emails in preparing her expert report, listed them on her report, and was even deposed regarding the report. Waiver occurred because the privileged emails

became "facts or data considered by the expert witness." *See* Fed. R. Civ. P. 26(a)(2)(B)(ii). Once used in this manner by Stahlbush's testifying expert and produced to opposing counsel, attorney-client privilege was waived, regardless of whether disclosure was inadvertent or intentional. *See In re Vioxx Prod.*, No. MDL 1657, 2007 WL 1558700, at *4 (E.D. La. May 30, 2007) (inadvertent disclosure to testifying expert waived work-product privilege, where document was considered by expert and provided to opposing counsel); *Poole v. Gaston Cty.*, No. 3:15-CV-309-DCK, 2017 WL 2059669, at *7 (W.D.N.C. May 12, 2017) (compelling production of privileged document that was inadvertently produced to and considered by testifying exert). *See also Republic of Ecuador v. For Issuance of a Subpoena Under 28 U.S.C. Sec. 1782(a)*, 735 F.3d 1179, 1187 (10th Cir. 2013) (holding that "facts or data" is construed broadly to require disclosure of any material considered by testifying expert, even if materials are protected by work-product privilege).[2] The Court rejects Stahlbush's argument that, because Dr. Reilly did not rely on the documents in forming her opinion, no waiver occurred. The advisory committee's notes make clear that "[t]he disclosure obligation extends to any facts or data 'considered' by the expert in forming the opinions to be expressed, not only those relied upon by the expert." Fed. R. Civ. P. 26(a)(2)(B) advisory committee's notes (2010).

With respect to the 3/21/17 Email used by Bama's counsel during Dr. Reilly's deposition, a second "use" waiver occurred. Bama's counsel cross-examined Dr. Reilly extensively about the 3/21/17 Email and identified the parties to the communication as attorney and client. Stahlbush's counsel failed to stop the questioning or make any record regarding privilege, which resulted in

---

[2] Although the *Republic of Ecuador* case did not address *inadvertent* disclosures of privileged materials to an expert witness, the Court cites the case for the principle that consideration of a privileged document by an expert generally waives privilege, save the explicit exceptions in Rule 26(b)(4).

waiver of privilege for the 3/21/17 Email. *See Certain Underwriters at Lloyd's, London*, 218 F.

Supp. 3d at 201 (failing to "timely and specifically object to a party's *use* of" privileged material

during deposition constitutes waiver); *Entrata, Inc. v. Yardi Sys., Inc.*, No. 2:15-CV-00102, 2018

WL 5438129, at *8 (D. Utah Oct. 29, 2018) (privilege waived where party failed to request return

of document or raise privilege objection, and instead allowed use of document during deposition).

*Cf. N.M. Oncology & Hematology Consultants, Ltd. v. MV/GBW Presbyterian Healthcare Servs.*,

No. CV 12-526, 2017 WL 5644390, at *9 (D.N.M. Feb. 27, 2017) (declining to find waiver where

lawyer at least "tried to preserve the privilege" during deposition by raising the issue and reserving

right to ask for redactions during deposition).

### B.    Stahlbush Cannot Satisfy Second and Third Requirements of Rule 502(b)

Alternatively, assuming that (1) Rule 502(b) may be applied following the above-described

uses of the inadvertently disclosed emails, and (2) disclosure to Dr. Reilly/Bama was inadvertent,

the Court finds Stahlbush cannot satisfy the second and third elements of Rule 502(b).  As to the

second element, Stahlbush's counsel provided the following explanation for the inadvertent

disclosure to Dr. Reilly:

> Upon collecting materials to provide for the review of Stahlbush expert Dr. Siobhan
> Reilly, I reviewed a network file folder that appeared to contain only duplicates of
> Stahlbush's discovery production to Bama.  The production folder contained over
> 1,000 documents. Upon reviewing the majority of the documents, I concluded the
> folders were identical, but produced both folders so as to provide Dr. Reilly all the
> materials in the file.  I did not rely on search software, algorithms, or any other
> means that could have truncated the process, but also might have resulted in
> additional oversights.

ECF No. 47-1.  The claw back letter indicates there existed a "client docs" folder containing the

emails and that the emails were "mistakenly" provided to Dr. Reilly from such folder.  ECF No.

43-11.  Construing these explanations together, Stahlbush's counsel's explanation appears to be:

(1) the emails were in a "client docs" folder on the firm's computer network (though the emails

had not been produced to Bama or listed on a privilege log); (2) there was another folder on the network entitled "production folder," which contained the previous production to Bama; (3) counsel produced both folders to Dr. Reilly because she believed their contents were identical after a thorough review.

This explanation is insufficient to demonstrate that Stahlbush took reasonable steps to prevent disclosure. It is not clear what process was *originally* used to locate and protect privileged client documents, why the emails ended up in the "client docs" folder without being reviewed or identified on a privilege log, or whether the documents were identified as privileged within the "client docs" folder. The Court understands why both folders were produced to the expert, but that does not demonstrate that Stahlbush took reasonable steps to prevent disclosure of the privileged materials. This is not a case involving a voluminous document production, and the explanation for the inadvertent disclosure is conclusory and unclear. *See Cudd Pressure Control, Inc.*, 297 F.R.D. at 500 (finding party seeking claw back failed to meet burden where counsel provided only conclusory statements and court was left to speculate as to what specific precautions were taken to prevent disclosure).[3]

Stahlbush also has not met its burden on the third element. During the deposition, when the 3/21/17 Email was discussed at length, Stahlbush's counsel failed to raise a privilege objection or take other reasonable steps to rectify disclosure and use of the 3/21/17 Email. After the deposition, when Stahlbush's counsel realized that other privileged items may have been produced,

---

[3] Bama does not argue that waiver occurred due to Stahlbush's failure to produce a privilege log earlier in the litigation, and the Court does not reach that issue. However, Rule 26(b)(5)(B) ordinarily is "intended to facilitate the swift production of discovery by providing some comfort to the opposing party that privileges are not waived by production in discovery." *Mafille v. Kaiser-Francis Oil Co.*, No. 18-CV-586-TCK-FHM, 2019 WL 3219151, at *2 (N.D. Okla. July 17, 2019). There was nothing "swift" about the inadvertent disclosure in this case.

Stahlbush's counsel still did not take clear or immediate action to protect privilege as to the 3/21/17 Email or other similar documents. Only after Bama's counsel contacted her, concerned about whether there remained other unproduced documents, did Stahlbush's counsel begin comparing the original Bama production with the production to Dr. Reilly. It took three weeks following the deposition to produce a privilege log for a total of forty-three privileged documents, many of which are iterations of the same email chain. Although the "promptness" inquiry is highly fact-dependent, the Court finds that Stahlbush failed to act promptly to rectify the error in this case.

Overriding fairness weigh strongly in favor of a finding of waiver. At this juncture, Dr. Reilly reviewed the emails and listed them on her report; Bama's counsel reviewed the emails in preparation for the deposition; and Bama's counsel cross-examined her with the 3/21/17 Email and challenged her causation opinion. Any "claw back" remedies the Court could attempt to fashion will cause delay and unfair prejudice to Bama. Rule 26(b)(5)(B) is intended for the return of inadvertently disclosed documents, not the unraveling of litigation events.

## III.    Conclusion

Plaintiff's Discovery Motion Pursuant to Fed. R. Civ. 26(b)(5)(B) (ECF No. 43) is GRANTED. The Court orders as follows: (1) Stahlbush is precluded from clawing back the emails pursuant to Federal Rule of Civil Procedure 26(b)(5)(B); and (2) Stahlbush waived attorney-client privilege as to all emails listed in the privilege log attached as Exhibit 12 to the Motion.

**SO ORDERED** this 19th day of August, 2019.


JODI F. JAYNE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT