IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

THE BAMA COMPANIES, INC.,

    **Plaintiff,**

v.

STAHLBUSH ISLAND FARMS, INC.,

    **Defendant.**

Case No. 18-CV-045-JFH-JFJ

## OPINION AND ORDER

This matter comes before the Court on Plaintiff's Motion in Limine to Exclude Portions of Defendant's Expert Reports [Dkt. No. 83], filed by Plaintiff The Bama Companies, Inc. ("Bama"). Defendant has responded to Plaintiff's Motion [Dkt. No. 89], and Plaintiff has filed a Reply brief in support of its Motion [Dkt. No. 91]. This matter is ripe for consideration.

Plaintiff seeks to exclude certain opinions of Defendant's experts, Dr. Siobhan Reilly and Mr. Gregory Gadawski. Dkt. No. 83. Bama argues that Dr. Reilly's opinions garnered from testing a sample of the berries and pies at issue in this case should be excluded because the sample tested was neither random nor representative. Dkt. No. 83 at 6-8. Plaintiff further seeks to exclude certain opinions of Defendant's damages expert, Gregoy Gadawski; Plaintiff argues that any calculation of Bama's damages that assumes Bama ceased production of pies on March 6, 2017 instead of continuing to produce pies until March 10, 2017 should be excluded as speculative and contrary to evidence. Dkt. No. 83 at 8-9. As explained below, Plaintiff's Motion is granted in part and denied in part.

## BACKGROUND

This case arises from a dispute over whether Stahlbush berries used by Bama in pies it produced were contaminated with stones. Dkt. No. 7. In March 2017, Bama discovered that some

pies it produced using Stahlbush berries contained rocks. Dkt. No. 128 at ¶ 3. On December 27, 2017, Bama filed suit alleging that the Stahlbush berries were the source of the contamination. Dkt. No. 2-1 at 4-6. Bama asserted claims against Stahlbush for breach of contract and breach of warranty. Dkt. No. 2-1 at 4-6. Stahlbush removed the case on January 18, 2018. Dkt. No. 2. Bama amended its complaint to add a negligence claim on January 23, 2018. Dkt. No. 7.

The testimony of two of Defendant's proposed expert witnesses is at issue. Dr. Siobhan Reilly tested 10 boxes of berries and 61 boxes of fruit pies "to determine the presence of foreign materials in the product." Dkt. No. 83-1 at 1. Defendant seeks to introduce the results of Dr. Reilly's testing. Plaintiff argues that Reilly's opinions should be excluded because the product that she tested was not randomly sampled or a scientifically representative sample of the products at issue. Dkt. No. 83 at 6-8. Defendant argues, in rebuttal, that Dr. Reilly does not conclude that no rocks could have been present in Bama's pies; instead, Reilly would testify that "some of the supposedly contaminated pies may have contained, not rocks, but organic matter common to blackberries." Dkt. No. 89 at 2. Defendant further argues that Dr. Reilly's methodology in selecting the product to be tested was sufficiently random. Dkt. No. 89 at 3-4.

Defendant has also endorsed Mr. Gregory Gadawski who prepared a report on Plaintiff's damages. Plaintiff moves to exclude the portion of Gadawski's report that calculates Plaintiff's damages assuming that Plaintiff should have ceased production of pies on March 6, 2017. Dkt. No. 83 at 5-6. Plaintiff argues that there is "no credible evidence" that it should have ceased producing pies on March 6, 2017 and accordingly, any opinion of Gadawski calculating Plaintiff's damages based upon the assumption that it should have ceased production on that date is purely speculative and not based in evidence. Dkt. No. 83 at 8-9. Defendant argues that Gadawski's

opinions, even if hypothetical, are grounded in the facts and issues in this case and entirely permissible. Dkt. No. 89 at 5-6.

## ANALYSIS

Federal Rule of Evidence 702 permits a qualified expert witness to testify and render an opinion when:

(a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) The testimony is based on sufficient facts or data;
(c) The testimony is the product of reliable principles and methods; and
(d) The expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  "When an objection to an expert's testimony is raised, the court must perform *Daubert* gatekeeper duties before the jury is permitted to hear the evidence." *Bright v. Ohio Nat'l Life Assur. Corp.*, No. 11-CV-475, 2013 WL 12327512, at *1 (N.D. Okla. Jan. 9, 2013) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 149 (1999)).

"First, the Court determines whether the expert is qualified by knowledge, skill, experience, training or education to render the opinion." *Lippe v. Howard*. 287 F.Supp.3d 1271, 1277-78 (W.D. Okla. 2018).  "If so qualified, the Court must then determine whether the expert's opinion is reliable and relevant under the principles set forth in *Daubert* and *Kumho Tire*, in that it will assist the trier of fact." *Id.* at 1278.  The party offering the expert testimony has the burden to prove that the expert is qualified and that his opinions are based in sound methodology and sufficient facts.  *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003).

I. **Dr. Reilly will not be permitted to testify regarding the condition of any berries or pies that she did not personally test.**

Plaintiff challenges the validity and reliability of Dr. Reilly's sampling methods and argues that, due to Reilly's failure to test a random, representative sample, her opinions should be

excluded. Defendant counters that Dr. Reilly's sampling *was* random and sufficiently representative and, further, that, because Dr. Reilly does not propose to give testimony opining on the condition of all of the berries and pies generally, her sampling need not be statistically valid. Dkt. No. 89 at 3-4.

The Court is not persuaded by Defendant's arguments that Dr. Reilly's testing need not be of a random, representative sample. Defendant describes Dr. Reilly's proposed testimony as follows: "Dr. Reilly's testing indicates that at least some of the supposedly contaminated pies may have contained, not rocks, but organic matter common to blackberries due to the limitations of washing and processing." Dkt. No. 89 at 1-2.

It is unclear to the Court whether Defendant's reference to "supposedly contaminated pies" refers to the pies that Dr. Reilly tested or to the pies that caused Bama to cease production and file suit. If Dr. Reilly seeks only to testify as to the condition of the berries and pies tested (and which are not the subject of the suit) then it would seem her testimony is of limited relevance. If, based upon her testing, Dr. Reilly would have the jury make inferences regarding the berries and contaminated pies in which Plaintiff alleges that rocks were found, then Dr. Reilly's testing must have been based upon a statistically valid sample of product.

Plaintiff cites several cases forwarding its position that Dr. Reilly's sampling was unscientific and inadequate. Of note is *Certified Engineering Copier Systems, Inc. v. National City Commercial Capital Co., LLC*, 2009 WL 1324047, *5 (D. Utah May 11, 2009). This was a breach of contract action in which the plaintiff alleged that a shipment of copiers that it had purchased did not meet contract specifications as they were too damaged and had been used too heavily. *Certified Engineering*, 2009 WL 1324047 at *1. Defendant retained an expert who examined 20 of the 300 machines at issue and who proposed to testify as to the condition of the copying machines generally

based upon this examination. *Id*. at * 5. The district court permitted the expert to testify regarding the condition of the copiers that he had actually examined, but disallowed any testimony that would attempt to draw conclusions as to the state of the copiers generally because the expert failed to examine a "scientifically random" sample. *Id*. The district court aptly noted that, "Using the conditions of a small sample to draw conclusions about a much larger group is statistically reliable only if the small sample is chosen at random." *Id*.; see also *R&R International, Inc. v. Manzen, LLC*, 2010 WL 3605234 (S.D. Fl. 2010) ("In order to satisfy the scientific sampling standard [plaintiff's] samples should have been chosen using some method that assures the samples are appropriately representative of [plaintiff's] business."); *Allgood v. General Motors Corporation*, 2006 WL 2669337 (S.D. Ill. 2006); *Speen v. Crown Clothing Corp.,* 102 F.3d 625, 635 (1st Cir. 1996).

Defendant chiefly attempts to distinguish this case law by arguing that the nature of Dr. Reilly's testimony is so different from the opinions at issue in the cited cases that Defendant does not need to show that Dr. Reilly tested a random, representative sample. The Court has already rejected this argument. Dr. Reilly may not propose to draw conclusions regarding *all* of the untested berries and pies, but it appears that she does seek to draw conclusions regarding the berries and pies that Plaintiff alleges were contaminated. Dkt. No. 89 at 1-2. This is a distinction without a difference – any opinion regarding untested product can only be justified if Dr. Reilly analyzed a scientifically valid sample.

Defendant has failed to demonstrate that Dr. Reilly tested a random, representative sample of product. From Dr. Reilly's deposition testimony, it does not appear that any kind of methodology was employed to obtain a random, representative sample. Dr. Reilly testified that that there were "hundreds, for sure, maybe even thousands" of boxes of berries in cold storage.

Dkt. No. 83-9 at 16:23-24. Dr. Reilly, without any apparent selection criteria, took 10 boxes of berries for testing. *Id*. Though she testified that her selection was "random" in that there was "no design to how the population was presented," there was "no opportunity to position the population and randomize it so that I could strategically pull a random sample." *Id*. at 18:14-15; 19:5-6. Reilly also testified that the product was "thrown into that facility" and she had "nothing to do with it" and so there was no bias in selection. *Id*. at 19:15-17. It was further established that the 10 boxes of berries were all drawn from two of eight lots of berries, and there was confusion on Dr. Reilly's part regarding the significance of the lot numbers. *Id*. at 21. Dr. Reilly tested 61 boxes of finished pies, but the Court has been provided with little information regarding how Dr. Reilly selected these pies and whether her process for doing so differed from her process for selecting the berries for testing. Dr. Reilly's report is silent as to any process employed to obtain a random, representative sample for testing.

Though Dr. Reilly states that it was not possible to "position the population and randomize it" so that she could pull a random sample, neither she nor Defendant explains why this is so. Dr. Reilly's testimony and report, and the fact that only berries from two of eight lots were examined, leads the Court to believe that no efforts at all were made to obtain a random, representative sample and, instead, product was taken in a haphazard manner. Defendant has failed to demonstrate that Dr. Reilly tested a sufficiently random, representative sample and, accordingly, she will be precluded from offering any opinion as to any product that she did not personally test. Dr. Reilly should not, for example, testify that, based upon the lack of rocks found in her testing, it is likely or probable that the rocks at issue in this litigation were introduced by Plaintiff.

**II.     Mr. Gadawski's proposed testimony is admissible**.

Plaintiff also moves to exclude testimony of Defendant's damages expert, Greg Gadawski, regarding Plaintiff's damages had Plaintiff ceased production of pies on March 6, 2017. This appears to have been the date when Plaintiff's metal detector first indicated a foreign object in one of Plaintiff's pies. Plaintiff argues that the testimony is hypothetical and not based in fact.

Firstly, there is nothing improper about an expert presenting opinions or testimony based upon hypotheticals, and Plaintiff has cited no authority to this Court suggesting otherwise. Plaintiff's objection that there is no factual basis for the challenged opinion is similarly unavailing – the factual basis appears to be that this is when Plaintiff first learned that there may have been an issue with the shipment of berries. Whether a jury will credit this testimony or draw the conclusions advocated by Defendant is up to the jury, not this Court. Plaintiff has not presented this Court with any basis for excluding Gadawski's proposed testimony.

### CONCLUSION

Plaintiff's objections to the opinions of Dr. Reilly are well-founded to the extent that, based upon her limited testing, Reilly would seek to draw conclusions or make inferences about any pies or berries that she did not personally examine. Plaintiff's objection to Mr. Gadawski's proposed testimony is off-base and is overruled.

IT IS THEREFORE ORDERED that Plaintiff's Motion in Limine to Exclude Portions of Defendants' Expert Reports [Dkt. No. 83] is GRANTED, in part, and DENIED, in part.

Dated this 29th day of September 2025.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE